## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PROXIM CORPORATION, et al., | ) | Case No. 05-11639(KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | Re Dkt. No. 602 |

### <u>MEMORANDUM OPINION</u> [1]

The matter before the Court is Debtors' Motion for Summary Judgment ("the Motion") on their Objection to Claim No. 95 ("the Claim") of Santa Clara County, California ("Santa Clara") (Docket No. 602). Santa Clara filed the Claim consisting of property taxes and interest or penalties[2] and seeks priority tax treatment. Debtors seek reclassification of the Claim as a general unsecured claim.

On February 22, 2007, the Debtors filed the Second Omnibus Objection to Claims Pursuant to Sections 105(a) and 502(b) of the Bankruptcy Code and Rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure (Substantive) (the "Objection") (Docket No. 462) seeking, among other things, to reclassify the Claim as a general unsecured claim. Santa Clara filed its Response to Debtors' Second Omnibus Objection to Claims (the "Response") (Docket No. 483) on October 10, 2006, reasserting that the Claim is entitled to priority status. Debtors filed their Reply to Opposition on March 12, 2007 (Docket No. 627) and submitted the matter for decision.

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this matter by Federal Rule of Bankruptcy Procedure 9014.

[2] The parties dispute whether the additional charges are interest or penalties.

# I. **FACTS**[3]

On June 11, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Court entered an order confirming the Debtors' First Amended Joint Plan of Liquidation on January 18, 2007 (Docket No. 576).

Pursuant to West's Ann. Cal. Rev. & Tax Code § 531 of the California Code of Revenue and Taxation ("Cal. Code"), Santa Clara performed an audit of Debtors' property. By Notice of Proposed Escape Assessment, dated June 8, 2005, Santa Clara notified Debtors of the results of its audit for tax years 2001 through 2004. The Notice stated that the "adjustments will become final" on June 22, 2005, eleven days after the Petition Date. According to Santa Clara, the audit showed that Debtors had not reported all of their assets.[4]

Santa Clara also sent Debtors an Unsecured Property Tax Bill for each of the fiscal years ending June 30, 2002; June 30, 2003; June 30, 2004 and June 30, 2005. These tax bills state that the taxes were assessed pursuant to Cal. Code § 531.4 and that interest was added to the taxes owed pursuant to Cal. Code § 506.

Santa Clara submitted the Claim as an unsecured priority claim under section 507(a)(8)(B) of the Bankruptcy Code ("the Statute") in the amount of $346,959.31.[5] The Claim covers alleged property taxes and related interest and other penalties for years 2001

---

[3] The facts are largely taken from the Motion and Santa Clara does not contest them. Indeed, Debtors do not contest Santa Clara's brief statement of relevant facts. Therefore, there are no contested facts and summary judgment is appropriate under the standards set forth *infra*.

[4] For purposes of this decision, the Court accepts the accuracy of the audit.

[5] There is a disparity between the amount specified in the Claim ($364,959.31) and the total of the attachments to the Claim ($354,652.81).

through 2005.  The amount of the Claim at issue ("the Contested Claim") is $280,928.70,

comprised of $241,152.04 for property taxes ("Property Taxes") and $39,776.66 for interest

or penalties.  On December 2, 2005, Santa Clara filed the Claim which amended Claim

Number 12 filed on July 20, 2005.

## II.  JURISDICTION

The Court has subject matter jurisdiction over this proceeding.  28 U.S.C. §§ 1334(b)

and 157(b)(1).  This is a core proceeding.  28 U.S.C. § 157(b)(2)(A) & (B).

## III.  DISCUSSION

### A.  Standard of Review

The Court should grant a summary judgment motion "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant must establish that no

genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 585 n.10 (1986).  Facts that may affect the outcome of a suit are "material."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Horowitz v. Fed. Kemper Life

Assurance Co.*, 57 F.3d. 300, 302 n.1 (3d Cir. 1995).  All facts are viewed and all reasonable

inferences are drawn "in the light most favorable" to the non-movant.  *Pa. Coal Ass'n v.

Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).  "[T]he nonmoving party must come forward with

'specific facts showing that there is a *genuine issue for trial*'."  *Matsushita*, 475 U.S. at 587

(emphasis in original).  "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial'." *Id.*

**B.    Issues Presented**

The issues presented by the Motion are purely legal in nature and although straightforward, are not uncomplicated:

1. Were the Property Taxes "assessed" pre-petition under California and bankruptcy law and, if so, are they entitled to priority status?

2. Is Santa Clara entitled to interest or is that portion of the Claim a penalty?

3. In the alternative, is Santa Clara entitled to an administrative expense claim?

**C.    Parties' Positions**

**1.    Debtors' Argument**

Santa Clara's effort to have property taxes dating back to 2001 qualify as priority claims runs afoul of the Statute.[6] The Statute limits property tax priority claims to one year prior to the petition date for commencement of the case.

Debtors argue that the Property Taxes were not assessed[7] before the Petition Date and

---

[6] Section 507 Priorities
    (a)    The following expenses and claims have priority in the following order:
                *    *    *    *
    (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for-
                *    *    *    *
        (B)    a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition.

[7] The Court is applying the Statute in effect on the Petition Date.  Effective October 17, 2005, the Statute was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, by changing "assessed" to "incurred."

4

last payable without penalty within the year prior to the Petition Date and, therefore, do not constitute priority claims. Debtors further argue four things: (1) a tax assessment cannot occur before it is final, *King v. Franchise Tax Bd. of the State of Cal.* (*In re King*), 961 F.2d 1423, 1426 (9th Cir. 1992); (2) California law provides that an escape assessment is not effective without notification, Cal. Code § 534; (3) the "Notice of Proposed Escape Assessment," dated June 8, 2005, stated that the adjustments to Debtors' property tax became final on June 22, 2005, eleven days after the Petition Date and, thus, were not assessed before the bankruptcy case commenced as the Statute required; (4) since the Property Taxes were not payable until assessed on June 22, 2005, they were not payable within the year prior to the Petition Date and therefore fail to comply with the Statute.

### D.    Santa Clara's Argument

Santa Clara argues that Debtors' tax liability arose pre-petition and that any delay in assessment resulted from Debtors' failure to accurately report their assets. According to Santa Clara, California law uses a four year audit cycle for business personal property statements. Cal. Code § 469. Santa Clara audited Debtors for the 2001/2002 through 2004/2005 tax years and concluded that Debtors did not report all of their assets for those years. On June 8, 2005 (three days before the bankruptcy filing) Santa Clara informed Debtors of the escaped assessments for the unreported assets.

The Property Taxes at issue resulted from the audit which determined that Debtors had failed to report all of their assets for the relevant tax years. Santa Clara's entitlement to the claimed taxes was fixed on January 1st of the respective years, the lien dates of those tax

years.  *Cal. Computer Prods., Inc. v. County of Orange*, 107 Cal. App. 3d 731, 736 (1980).

*See also* Cal. Code § 2901 ("Taxes on unsecured property are due on the lien date."), and §

2192 ("Except as otherwise specifically provided, all tax liens attach annually as of 12:01

a.m. on the first day of January preceding the fiscal year for which the taxes are levied.").

Santa Clara charged interest on the escaped assessments from the dates the taxes were

originally due.  It did not assess penalties.  Debtors incurred liability for these taxes long

before the Petition Date, and Debtors were notified of the escaped assessments before the

Petition Date.

The Statute was amended in 2005 to replace "assessed" with "incurred."  The

legislative history indicates the change was intended to eliminate confusion regarding the

meaning of "assessed":

> Under current law, many provisions of the Bankruptcy Code are
> keyed to the word "assessed."  While this term has an accepted
> meaning in the Federal system, it is not used in many state and
> local statutes and has created some confusion.  To eliminate this
> problem with respect to real property taxes, section 706 amends
> section 507(a)(8)(B) of the Bankruptcy Code by replacing the
> word "assessed" with "incurred."  (H.R. Rep. No. 109-31 to
> accompany S.256, 109[th] Cong., 1[st] Sess. (2005) (under heading
> discussing Section 706 of bill)).

Congress' original intent was to give priority to taxes incurred before the petition date.

*See In re Members Warehouse, Inc.*, 991 F.2d 116 (4th Cir. 1993) and *In re Grivas*, 123 B.R.

876 (Bankr. S.D. Cal. 1991), where the courts focused on when the tax was *incurred* based

on the date economic liability for the tax arose under state law.

Bankruptcy Code Section 502(i) also indicates that the relevant issue is when the taxes

were *incurred*:

> A claim that does not arise until after the commencement of the
> case for a tax entitled to priority under section 507(a)(8) of this
> title shall be determined, and shall be [allowed or disallowed
> under this section] the same as if such claim had arisen before
> the date of the filing of the petition.

### E.  Decision

The parties do not raise any factual issues let alone material issues of fact and the Court can find none.  Since only legal issues remain, summary judgment is appropriate.

Santa Clara derides Debtors' argument as "overly formalistic" because it is based on a strict reading of the Statute and the controlling import of "assessed."  The Court disagrees and finds that Santa Clara's claim is not entitled to priority status.

The Court cannot ignore the plain meaning of the Statute in effect at the commencement of the case.  On the Petition Date, the Statute used "assessed."  Months later, Congress amended the Statute by replacing "assessed" with "incurred."  Santa Clara posits that the amendment reflects Congressional intent prior to the amendment.  The Court finds Debtors' position to the contrary more persuasive.  First, if Santa Clara is correct that the words were interchangeable, the amendment was unnecessary. Second, Congress used "incurred" in section 503(b)(1)(B)(i) of the Bankruptcy Code to specify taxes qualifying for administrative expense classification, and "assessed" in the Statute to specify the property taxes that are entitled to priority status.  Accordingly, "assessed" does not mean "incurred."

The next logical issue to be resolved is the question of when, under California law, is an escape property tax assessed?  Santa Clara's answer to this issue is that it did not

discover the unreported assets until it conducted the audit and the Court should not permit Debtors to avoid priority classification based upon their alleged failure to report accurately their assets.

Santa Clara's argument begs the issue. The question is when the Court should deem the escape tax liability to have been *assessed*. The most instructive case is *In re King*, 961 F.2d 1423.

In *King*, the court ruled that assessment does not occur until it is final. *King* involved California income tax, the statutory process for which is closely identical to escape assessments for property taxes. *See* Cal. Code § 18590. Income tax deficiencies are not deemed assessed until the expiration of a notice period set by the proposed assessment notice and a second notice demanding payment is issued. Using that format here, Santa Clara issued its notice of proposed assessment on June 8, 2005, gave the necessary ten-day objection period and then sent the demand for payment. The timeline means the assessment of the Property Tax occurred no earlier than June 22, 2005, after the Petition Date. Since the assessment occurred after the commencement of the cases, the Claim does not qualify as a priority under the Statute.[8]

Santa Clara's alternative argument is that if the taxes do not qualify for priority status the Court should afford them administrative expense status. However, the taxes were not incurred after the Petition Date but, instead, before Debtors' estates existed. Santa Clara did

---

[8] Given its holding, the Court need not address the additional arguments the parties raise, namely, whether the "interest" Santa Clara seeks constitutes a penalty and whether taxes at issue are more than one year old and therefore do not qualify under the Statute.

not assert an administrative claim in a timely fashion.[9]  Moreover, as Debtors explain, the taxes obviously did not benefit the estates.

## CONCLUSION

Santa Clara's effort to obtain priority status or, in the alternative, administrative expense status fails.  The taxes do not satisfy the Statute for priority status or the requirements for treatment as administrative expense.  Accordingly, Debtors' motion for summary judgment is granted and a portion of Claim No. 95 in the sum of $280,928.70 is reclassified as a general unsecured claim.  An Order consistent with the Opinion shall be issued.

Dated: June 12, 2007

Kevin Gross, U.S.B.J.

---

[9]  The bar date for administrative claims was February 23, 2007 (Docket No. 588).